**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

UNITED STATES OF AMERICA,

          Plaintiff,

vs.

JEREMY D. TERRELL,

          Defendant.

No. CR15-3051-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
MAGISTRATE'S REPORT AND
RECOMMENDATION
CONCERNING DEFENDANT'S
MOTION TO SUPPRESS**

_____

**TABLE OF CONTENTS**

*I.*    *INTRODUCTION AND BACKGROUND* ............................................................ 2
    *A.*    *Procedural Background* ...................................................................... 2
    *B.*    *Factual Background* ............................................................................ 5

*II.*   *LEGAL ANALYSIS* ................................................................................... 12
    *A.*    *Standard Of Review* ......................................................................... 12
    *B.*    *Objections To Report And Recommendation* ............................... 17
        *1.*   *Necessity for preauthorization* ........................................ 17
        *2.*   *Requirement that affidavit be signed and sworn* .......... 19
        *3.*   *Probable cause* ................................................................. 20
        *4.*   *Necessity requirement* ..................................................... 24
        *5.*   *Notice requirement* .......................................................... 25
        *6.*   *Applicability of Leon good faith doctrine* ...................... 26

*III.*  *CONCLUSION* ......................................................................................... 27

## I.    INTRODUCTION AND BACKGROUND

### A.    Procedural Background

This case is before me on United States Magistrate Judge C.J. Williams's Report and Recommendation concerning defendant Jeremy D. Terrell's Motion to Suppress (docket no. 44).  In his Report and Recommendation, Judge Williams recommends denying Terrell's Motion to Suppress.   Terrell has filed timely objections to Judge Williams's Report and Recommendation.   I, therefore, undertake the necessary review of Judge Williams's Report and Recommendation.

On December 15, 2015, an Indictment was returned against Terrell, charging him with conspiracy to distribute 500 grams or more of a methamphetamine mixture which contained 50 grams or more of pure methamphetamine, having previously been convicted of a felony drug offense in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, and 851 (Count 1), possessing with intent to distribute 500 grams or more of a methamphetamine mixture which contained 50 grams or more of pure methamphetamine, having previously been convicted of a felony drug offense, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 851 (Count 2), and possessing with intent to distribute cocaine, having previously been convicted of a felony drug offense, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 851 (Count 3).

 Terrell subsequently filed a Motion to Suppress in which he seeks to suppress "any and all . . . evidence, tangible and testimonial, which was derived, directly or indirectly," from wiretaps.   Defendant's Br. at 35.   Terrell contends that the evidence must be suppressed for the following reasons:  (1) the police's failure to comply with the Attorney General's pre-authorization requirements; (2) the police's lack of probable cause to intercept Terrell's telephone calls on June 2, 2015; (3) the police's failure to demonstrate that the interception of Terrell's telephone calls was necessary; (4) the police's failing to comply with the minimization requirements in the wiretap orders; and (5) the prosecution's failure to comply with the post-intercept notification requirements which prejudiced

Terrell. Terrell also argues that the *Leon* Good Faith Doctrine was inapplicable and, as a result, all evidence obtained as a result of the wiretaps must be suppressed.

The prosecution filed a timely resistance to Terrell's motion. Terrell's motion was referred to Judge Williams, pursuant to 28 U.S.C. § 636(b). Judge Williams conducted an evidentiary hearing and then filed a Report and Recommendation in which he recommends that Terrell's motion be denied. In his Report and Recommendation, Judge Williams initially concluded that the Douglas County Attorney was not required to obtain pre-authorization from the Nebraska Attorney General before applying for the wiretap orders in this case. Judge Williams further determined that the wiretap application submitted to the Nebraska Attorney General was not required to be signed and sworn. Accordingly, Judge Williams found that the Douglas County Attorney complied with the statutory requirement for submitting the application and affidavit to the Nebraska Attorney General for a nonbinding recommendation. Along those same lines, Judge Williams concluded that the Douglas County Attorney did not have to obtain pre-authorization from the Nebraska Attorney General for each wiretap extension. Thus, Judge Williams found that the Douglas County Attorney fully complied with the statutory requirements for obtaining the wiretaps and extensions.

Judge Williams then turned to the issue of probable cause to intercept Terrell's telephone calls at the time of the first wiretap. Judge Williams concluded that, because the first wiretap was conducted on the telephones of other members of the gang, not on Terrell's telephones, it was only necessary that the affidavit provide probable cause to believe those members of the gang were using their telephones to communicate about criminal activity and it was not necessary that the affidavit additionally establish probable cause for each of the targets, including Terrell. Subsequently, when, agents sought a wiretap on Terrell's telephones, the supporting affidavit established probable cause to believe Terrell would use his telephones to discuss criminal activity. Judge Williams next took up Terrell's claim that evidence obtained from the wiretaps must be suppressed

because the wiretaps were unnecessary. Judge Williams found that the supporting affidavits provided an adequate factual basis to inform the state court judge why other investigative techniques were not sufficient or likely to succeed in achieving the goals of the investigation. Next, Judge Williams considered Terrell's claim that law enforcement officers did not comply with the minimization requirements contained in the wiretap orders. Judge Williams found that the prosecution had met its burden of showing that the law enforcement agents reasonably minimized the calls as required by the court's orders. Judge Williams next rejected Terrell's argument that the prosecution failed to timely notify Terrell that his communications were being intercepted. Judge Williams found that the prosecution provided Terrell with sufficient, actual notice of the wiretap within the required 90 day period. Moreover, Judge Williams further determined that, even if the prosecution had failed to timely notify Terrell, such failure was a technical violation which does not require suppression, because Terrell had failed to show that the prosecution acted in bad faith and that he was prejudiced by the delay in notification. Finally, Judge Williams found that the *Leon* Good Faith Doctrine applied to both of Terrell's probable cause and necessity arguments because the showing of probable cause and necessity were not so facially deficient that law enforcement officers unreasonably relied on the state court judge's conclusions. Therefore, Judge Williams recommended denying Terrell's Motion to Suppress.

Terrell has filed objections to Judge Williams's Report and Recommendation. The prosecution filed a timely response to Terrell's objections. I, therefore, undertake the necessary review of Judge Williams's recommended disposition of Terrell's Motion to Suppress.

### B.    Factual Background

In his Report and Recommendation, Judge Williams made the following factual findings:

### A.  The Evidence of Criminal Activity

On February 6, 2014, the Omaha Police Department (OPD) responded to a call of shots fired. Officers stopped a car defendant was driving in which Calvin Clayton was a passenger. Officers searched the vehicle after smelling marijuana, and seized a loaded 9mm handgun under the driver's seat, and seven grams of marijuana. On July 8, 2014, local law enforcement officers stopped a car in Sarpy County, Nebraska. The car was rented in defendant's name, and he was a passenger. Another male was driving, and there was another male passenger. After smelling marijuana, officers searched the car and recovered $21,591 in cash.

On July 21, 2014, defendant flew from Montego Bay, Jamaica, to Chicago, Illinois, where agents with the Department of Homeland Security screened him and discovered he was carrying $2,100 cash. Agents searched his cell phone as well, which disclosed photos of him handling bags of marijuana and text messages indicating he was selling marijuana in Omaha.

In the fall of 2014, a joint Federal Bureau of Investigation (FBI) and the OPD initiated an investigation into a series of fourteen armed bank robberies which took place in the Omaha area between June and November 2014. The investigation revealed that Blood gang members, calling themselves the NIKE gang, were allegedly involved in the robberies. Defendant was identified as an alleged member of the gang. During the investigation, law enforcement agents discovered that defendant had rented twenty-two vehicles from Enterprise Car Rental (Enterprise) since June 2014. In June and August 2015, law enforcement officers obtained orders

permitting them to intercept telephone communications by members of this group, including defendant's telephones.

As a result of the wiretaps, law enforcement officers came to believe defendant was living in Fort Dodge, Iowa. On August 14, 2015, armed with information from the wiretap, officers with the Fort Dodge Police Department (FDPD) stopped defendant's car when he tried to elude them. When he fled from the car, he attempted to destroy crack cocaine by swallowing it or throwing it. Officers recovered 54 grams of suspected crack cocaine. Officers charged defendant only with felony eluding so as not to reveal the existence of the wiretap.

On August 29, 2015, FDPD officers and FBI agents attempted to perform a controlled delivery of a package containing three pounds of methamphetamine, which they had previously intercepted in the United States Mail on its way to defendant at a residence in Fort Dodge. No one responded to the door of the house where the agent attempted to deliver the package, but officers saw defendant and another man exit the back of the house shortly after the failed delivery. A short time later, defendant retrieved the package from the Post Office. Agents attempted to stop defendant's vehicle, but he fled from officers, ultimately losing control of the vehicle. Again, officers charged defendant only with eluding so as not to disclose the existence of the wiretap.

**B.    The    Facts    Surrounding    the    Wiretap Authorizations**

In the summer of 2015, law enforcement officers, working with the County Attorney for Douglas County, Nebraska, obtained authorization to intercept telephone calls made by the targets of the investigation. This involved two wiretaps: the first on phones possessed by Qwinton Henderson and Walter Goodwin, other members of the NIKE gang; and the second on phones defendant possessed. The government also obtained extensions for these wiretaps.

### 1. First Wiretap

On June 2, 2015, officers obtained authorization from a Nebraska state court judge to tap the telephones of other NIKE gang members (but none belonging to defendant). The procedure began with the Douglas County Attorney submitting the Application and Affidavit for Intercept of Communications to the Nebraska Attorney General's Office for a recommendation. The application and affidavit provided to the Nebraska Attorney General's Office was not "signed and sworn." Nebraska law provides that when a county attorney applies for an initial wiretap order, that the county attorney submit the application to the Nebraska Attorney General's office. Neb. Rev. Stat. § 86-291 (2015). The Attorney General's Office must provide a recommendation to the district court within twenty-four hours regarding whether the court should grant the application. *Id*. In this case, on June 1, 2015, the Attorney General issued a recommendation to grant the application. Exhibit 1. This recommendation was provided to the state district court on June 2, 2015, along with the affidavit in support of the wiretap application.

The affidavit in support of the wiretap (June Affidavit) contained a summary of defendant's criminal history, which included felony firearms violations and a conviction for possessing marijuana. Exhibit 2, ¶ 26. The June Affidavit included a background section, in which the affiant alleged that the investigation had revealed that defendant was the leader of a gang involved in robberies and drug trafficking. Exhibit 2, ¶¶ 32-33. The June Affidavit provided the following additional information specifically about defendant: On February 6, 2014, Omaha police officers responded to a shots fired report and stopped a car defendant was driving, from which officers seized seven grams of marijuana and a stolen, loaded handgun. Exhibit 2, ¶ 36. On August 8, 2014, officers stopped a vehicle in which defendant was an occupant, and seized $21,591 cash from the car. Exhibit 2, ¶ 37. On February 10, 2015, near the border with Colorado, Nebraska law enforcement officers stopped a car leased by defendant in which he was an occupant;

the car smelled strongly of marijuana, but officers did not find any drugs. Exhibit 2, ¶ 39. In March 2015, a source of information (SOI-1) proffered and told officers that defendant and Scyrus Keys were large scale marijuana dealers, and defendant was Keys' "right hand man"; officers accessed a Facebook page which showed a picture of Keys and defendant on a plane together. Exhibit 2, ¶ 40. Another source of information (SOI-2), told law enforcement agents that defendant was a gang member involved in a drug distribution network in Fort Dodge, Iowa. Exhibit 2, ¶ 42. A confidential source (CS-1) told agents that defendant and Steville Burns (a/k/a "Dunk"), are involved in crack cocaine production, narcotics sales, and bank robberies. Exhibit 2, ¶ 44. CS-1 was present in April 2015 at an Omaha residence where he saw some of the members of the NIKE gang (but not defendant) manufacturing crack cocaine. *Id.* CS-1 identified defendant as the head of the NIKE gang involved in narcotics distribution. *Id.* CS-1 also identified defendant from a photograph. *Id.* The June Affidavit included additional information about the other members of the gang, including multiple controlled buys made from other members. Exhibit 2, ¶¶ 57-89.

On June 2, 2015, the state court judge granted the application. Exhibit 3. The order provided, among other things, that "the interceptions shall be conducted in such a manner as to minimize the interception of communications (voice) not relating to this order." Exhibit 3, ¶ 13. The order further required the County Attorney to "make interim reports every twelve-sixteenth (12-16) day setting forth the number and nature of calls intercepted" over the target telephones. Exhibit 3, ¶ 17. The court amended the order the following day to adjust the interception to a telephone with a different ESN. Exhibit 4.

### 2. Extension of the First Wiretap

On June 30, 2015, the Douglas County Attorney applied for an extension of the wiretap. Exhibit 5. The County

Attorney also supported this application with an affidavit. A state court judge granted the extension on the same day. Exhibit 6. The order granting the extension contains the same language regarding minimization and reporting as the original order authorizing the wiretap. The County Attorney had not provided the Attorney General with a copy of the application and affidavit, and the Attorney General did not provide the state court judge with a recommendation regarding whether to grant the extension of the wiretap.

### 3. The Second Wiretap

On August 3, 2015, the Douglas County Attorney applied for a wiretap on defendant's phones. Exhibit 8. Pursuant to the Nebraska procedures, the Douglas County Attorney submitted the application and affidavit in support of the wiretap to the Nebraska Attorney General's Office for a recommendation. The copy of the application and order provided to the Attorney General was not signed and sworn. On July 30, 2015, the Nebraska Attorney General's Office issued a recommendation that the court grant the application to intercept calls on defendant's telephones. Exhibit 7. The Douglas County Attorney provided this recommendation to the court when he applied for the wiretap.

On August 3, 2015, the state district court judge granted the wiretap application. Exhibit 9. The order granting the application contained the same language regarding minimization and reporting as the order for the original wiretap.

The affidavit in support of the second wiretap repeated information contained in the affidavit in support of the original wiretap. The affidavit also referenced new information obtained from the prior wiretaps and other additional information about defendant. The affidavit recounted the contents of twenty-three of defendant's intercepted telephone conversations between June 6, 2015, and July 22, 2015. The affiant stated that, based on his training and experience, these

intercepted calls reflected defendant discussing drug trafficking. Exhibit 8, ¶¶ 69, 77, 92, 108, 111, 113, 115, 117, 119, 122, 124, 126, 128, 130, 132, 135, 137, 139, 141, 144, 146, 149, and 152. The affidavit further related instances of physical surveillance conducted by law enforcement agents which corroborated statements made in the intercepted telephone calls, and confirmed connections between suspects and some locations from which they operated.

### 4. Extension of the Second Wiretap

On September 1, 2015, the Douglas County Attorney applied for an extension of the second wiretap, which he again supported with an affidavit. Exhibit 10. This affidavit summarized another fourteen telephone calls intercepted between August 8, 2015, and August 29, 2015. The affiant stated that, based on his training and experience, these intercepted calls reflected defendant discussing drug trafficking. Exhibit 10, ¶¶ 22, 23, 26, 30, 32, 34, 36, 38, 40, 41, 43, 45, 46, and 48. The affidavit also related instances of surveillance by law enforcement officers, and two occasions when officers stopped vehicles driven by defendant from which they recovered large quantities of cocaine and methamphetamine. The Nebraska state court judge granted the application. Exhibit 11. The County Attorney had not provided the Attorney General with a copy of the application and affidavit for the extension, and the Attorney General did not provide the state court judge with a recommendation regarding whether to grant the extension of the wiretap.

### 5. Notice of the Wiretaps

The original wiretap ended on August 1, 2015, and the second wiretap ended on September 15, 2015.

On November 3, 2015, the County Attorney obtained from the court an extension of the deadline to provide notice to the people whose calls were intercepted on the first wiretap.

Exhibits 13 & 14. Assistant County Attorney Lux testified that he did not seek an extension of the deadline for notice regarding the second wiretap. He explained that he mistakenly believed notice would not be due on that wiretap until January 2016 because of the extension of that wiretap. He testified that he forgot that they "brought it down" or terminated the second wiretap early, on September 15, 2015, such that notice would actually have been due in mid-December 2015.

In any event, on January 15, 2016, the County Attorney signed the formal notices of both wiretaps, and notices were provided to the intercepted parties on January 19, 2016. Notice was provided to defendant through his attorneys because, as Assistant County Attorney Lux testified, defendant was represented by counsel and the County Attorney was concerned about having contact with a represented party if notice had been sent directly to defendant. The County Attorney provided the notice to defendant's attorneys by leaving a copy of the notice for them to pick up at the front desk of the County Attorney's Office, which is the normal procedure for providing discovery to defense counsel in Douglas County.

On September 14, 2015, defendant (through counsel) contacted the County Attorney's Office to request an opportunity to provide a protected proffer, meaning the terms of the proffer agreement barred the government from using against defendant statements he made during the proffer session. During the proffer that day, agents did not tell defendant that they had tapped his calls because the wiretap was still in effect on his phone. On October 26, 2015, defendant met with law enforcement officers (at defendant's request) for a second protected proffer. During the second proffer, the agents told defendant that they had intercepted his phone calls. The agents provided defendant, and his attorney, with several wiretap interception line sheets containing the dates and times of actual intercepted phone calls. Defendant continued to make additional incriminating statements after he was told about the wiretaps.

Report and Recommendation at 5-13 (footnotes omitted). Upon review of the record, I adopt all of Judge Williams's factual findings.[1]

## II.    LEGAL ANALYSIS

### A.    Standard Of Review

I review the magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see* FED. R. CIV. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court *may* review *de novo* any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files

---

[1]I note that the parties have stipulated to the following: (1) the wiretap of Terrell's telephones terminated on September 15, 2015; (2) Terrell received formal notice of the first wiretap on January 19, 2016; (3) Terrell received actual notice his telephone calls were tapped during a proffer session on October 26, 2015, and; (4) Terrell participated in proffer sessions on September 14, 2015, and October 26, 2015.

an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

*De novo* review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen *de novo* review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620-19 (2004) (noting *de novo* review is "distinct from any form of deferential review"). The *de novo* review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94-1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect 28 U.S.C. § 636(b))). Thus, while *de novo* review generally entails review of an entire matter, in the context of § 636, a district court's required *de novo* review is limited to "*de novo* determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any *issue* need only ask." (emphasis added)). Consequently, the Eighth Circuit Court of Appeals has indicated *de novo* review would only be required if objections were "specific enough to trigger *de novo* review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger *de novo* review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit Court of Appeals has been

willing to "liberally construe[]" otherwise general pro se objections to require a *de novo* review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and to conclude that general objections require "full *de novo* review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require *de novo* review, it is clear to me that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate."). Therefore, I will strive to provide *de novo* review of all issues that might be addressed by any objection, whether general or specific, but will not feel compelled to give *de novo* review to matters to which no objection at all has been made.

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting *de novo* review with "clearly erroneous standard" of review, and recognizing *de novo* review was required because objections were filed). I am unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly

erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Med. Clinic, P.C.*, 498 F.3D 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than *de novo* is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads me to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* FED. R. CIV. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, I believe one further caveat is necessary: a district court always remains free to render its own decision under *de novo* review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153-54. Thus, while a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and I may choose to apply a less deferential standard.[2]

---

[2]The Eighth Circuit Court of Appeals, in the context of a dispositive matter originally referred to a magistrate judge, does not review a district court's decision in similar fashion. The Eighth Circuit Court of Appeals will either apply a clearly erroneous

As noted above, Terrell has filed objections to Judge Williams's Report and Recommendation. I, therefore, undertake the necessary review of Judge Williams's recommended disposition of Terrell's Motion to Suppress.

---

or plain error standard to review factual findings, depending on whether the appellant originally objected to the magistrate judge's report and recommendation. *See United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) ("Ordinarily, we review a district court's factual findings for clear error . . . . Here, however, the record reflects that [the appellant] did not object to the magistrate's report and recommendation, and therefore we review the court's factual determinations for plain error." (citations omitted)); *United States v. Looking*, 156 F.3d 803, 809 (8th Cir. 1998) ("[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error."). The plain error standard of review is different than a clearly erroneous standard of review, *see United States v. Barth*, 424 F.3d 752, 764 (8th Cir. 2005) (explaining the four elements of plain error review), and ultimately the plain error standard appears to be discretionary, as the failure to file objections technically waives the appellant's right to appeal factual findings, *see Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (stating an appellant who did not object to the magistrate judge's report and recommendation waives his or her right to appeal factual findings, but then choosing to "review[] the magistrate judge's findings of fact for plain error"). An appellant does not waive his or her right to appeal questions of law or mixed questions of law and fact by failing to object to the magistrate judge's report and recommendation. *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir. 1998) ("The rule in this circuit is that a failure to object to a magistrate judge's report and recommendation will not result in a waiver of the right to appeal '"when the questions involved are questions of law or mixed questions of law and fact."'" (quoting *Francis v. Bowen*, 804 F.2d 103, 104 (8th Cir. 1986), in turn quoting *Nash v. Black*, 781 F.2d 665, 667 (8th Cir. 1986))). In addition, legal conclusions will be reviewed de novo, regardless of whether an appellant objected to a magistrate judge's report and recommendation. *See, e.g., United States v. Maxwell*, 498 F.3d 799, 801 n.2 (8th Cir. 2007) ("In cases like this one, 'where the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error.' We review the district court's legal conclusions *de novo*." (citation omitted)).

### B.     Objections To Report And Recommendation

### 1.     *Necessity for preauthorization*

Terrell objects to Judge Strand's determination that wiretap applications and extensions need not be pre-authorized by the Nebraska Attorney General. He argues that all of the applications for wiretaps and extensions in this case are invalid because the Douglas County Attorney failed to obtain pre-authorizations from the Nebraska Attorney General. The federal wiretap statute requires that a federal prosecutor have authorization from the United States Attorney General, or the United States Attorney General's assigned designee, before applying to a federal court for a wiretap. *See* 18 U.S.C. 2516(1); *see also United States v. Giordano*, 415 U.S. 505, 508 (1974) (noting that § 2516(1)1 confers "power on the 'Attorney General, or any Assistant Attorney General specially designated by the Attorney General' to 'authorize an application to a Federal judge . . . for . . . an order authorizing or approving the interception of wire or oral communications' by federal investigative agencies. . .").  However, as Judge Williams recognized, the federal wiretap statute also permits states to authorize the interception of wire communications. *See* 18 U.S.C. § 2516(2).   Section 2516(2) states, in pertinent part, that:

> The principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a statute of that State to make application to a State court judge of competent jurisdiction for an order authorizing or approving the interception of wire, oral, or electronic communications, may apply to such judge for, and such judge may grant in conformity with section 2518 of this chapter. . . .

18 U.S.C. § 2516(2).  Accordingly, a state may enact a law permitting a county attorney to apply for a wiretap without any requirement that the attorney general of the state authorize the application in advance.  Nebraska is one of these jurisdictions where both the "principal prosecuting attorney" of the state, the Nebraska Attorney General, and a "political

subdivision thereof," the county attorneys, have authority to apply for a state wiretap. *See* NEB. REV. STAT. § 86-291. Section 86-291 states, in pertinent part, that:

> The Attorney General or any county attorney may make application to any district court of this state for an order authorizing or approving the interception of wire, electronic, or oral communications, and such court may grant, subject to sections 86-271 to 86-295, an order authorizing or approving the interception of wire, electronic, or oral communications. . .

NEB. REV. STAT. § 86-291. Thus, in Nebraska, either the Nebraska Attorney General or any county attorney may make application for a wiretap order. Section 86-291 does not require both a county attorney and the Nebraska Attorney General to authorize the application for a state wiretap. However, the State of Nebraska has implemented additional review of wiretaps applications which are authorized by a county attorney. *See* NEB. REV. STAT. § 86-291. Section 86-291 states, in pertinent part that:

> At the same time a county attorney first makes application to the district court for an initial order authorizing or approving the interception of wire, electronic, or oral communications, the county attorney shall submit the application to the Attorney General or his or her designated deputy or assistant. Within twenty-four hours of receipt by the office of the Attorney General of the application from the county attorney, the Attorney General or his or her designated deputy or assistant, as the case may be, shall state to the district court where the order is sought his or her recommendation as to whether the order should be granted. The court shall not issue the order until it has received the recommendation or until seventy-two hours after receipt of the application from the county attorney, whichever is sooner, unless the court finds exigent circumstances existing which necessitate the immediate issuance of the order. The court may issue the order and disregard the recommendation of the Attorney General or his or her designated deputy or assistant.

NEB. REV. STAT. § 86-291. Accordingly, § 86-291 does not require the Nebraska Attorney General's authorization, but only that the Nebraska Attorney General make a recommendation to the district court concerning whether the wiretap authorization order should be granted. Section 86-291 is devoid of any language requiring the county attorney to obtain pre-authorization from the Nebraska Attorney General.

The case cited by Terrell, *United States v. Giordano*, 416 U.S. 505 (1974), does not concern a wiretap authorized under Nebraska law and is, therefore, not controlling precedent on the issue before me. Moreover, Terrell's reliance on *State v. Hinton*, 415 N.W. 2d 138 (Neb 1987) is misplaced. As Judge Williams cogently noted in his Report and Recommendation:

> defendant attempts to stretch the application of the holding in *State v. Hinton*, 415 N.W. 2d 138 (Neb 1987) well beyond its capacity. Contrary to defendant's argument, *Hinton* does not stand for the proposition that the Nebraska and federal wiretap statutes are identical or that all requirements of a federal wiretap are superimposed on a Nebraska wiretap. Rather, *Hinton's* holding is much more limited; it is restricted to the similarity between definitional sections of the federal and Nebraska wiretap statutes. 415 N.W.2d at 144.

Report and Recommendation at 19. Therefore, this objection is overruled.

### 2. *Requirement that affidavit be signed and sworn*

Terrell next objects to the Report and Recommendation on the ground that the applications/affidavits submitted to the Nebraska Attorney General had to be "signed and sworn." There is no dispute Assistant Douglas County Attorney Lux submitted unsigned/unsworn copies of the Douglas County Attorney's applications/affidavits for wiretaps in this case. However, I agree with Judge Williams that there is no requirement that signed/sworn applications/affidavits for wiretaps be submitted to the Nebraska Attorney General. Again, the plain language of § 86-291 is entirely silent about any requirement that wiretap applications/affidavits sent to the Nebraska Attorney General be

signed or sworn under oath.  Such a requirement exists under federal law, but then only when the application/affidavit is presented to a judge.  *See* 18 U.S.C. § 2518(1).  Section 2518(1) states, in relevant part that:

> Each application for an order authorizing or approving the interception of a wire, oral, or electronic communication under this chapter shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application.

18 U.S.C. § 2518(1).  Nebraska law similarly requires that an application made to a judge be in writing upon oath or affirmation.  *See* Neb. Rev. Stat. § 86-293(1).  Section 86-293(1), however, does not require that a wiretap application be sworn under oath before it is presented to the judge and does not require that a wiretap application be sworn under oath when it is presented to the Nebraska Attorney General.  Therefore, this objection is also overruled.

### 3.   *Probable cause*

Terrell also objects to Judge Williams's determination that the June Affidavit was sufficient on its face to establish probable cause to justify a wiretap of Terrell's telephone.  Nebraska Revised Statutes § 86-293(3) states that:

> Upon such application the judge may enter an ex parte order, authorizing or approving interception of wire, electronic, or oral communications or mobile telephone communications within the territorial jurisdiction of the court if the judge determines on the basis of the facts submitted by the applicant that:  (a) There is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 86-29; (b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception; . . . and (d) . . . there is probably cause for belief that the facilities from which or the place where the wire, electronic, or oral communications are to be intercepted are being used or are about to be used in connection with the commission of such

offense or are leased to, listed in the name of, or commonly used by such person.

NEB. REV. STAT. § 86-293(3).

The seminal case of *Illinois v. Gates*, 462 U.S. 213 (1983), provides the standard an issuing court must follow in determining whether probable cause supports an application for a wiretap and, consequently, the duty of the reviewing court when considering the propriety of that determination:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id*. 462 U.S. at 238.

Thus, the question presented on review of an issuing judicial officer's determination is not whether the reviewing court would have granted the wiretap based on the affidavit as presented, but whether the court which did issue the warrant had a " 'substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* at 238–39 (citation omitted). Accordingly, a reviewing court does not conduct a *de novo* review of the issuing judge's determination, but must instead afford it great deference. *Id.* at 236; *see United States v. McArthur*, 573 F.3d 608, 613 (8th Cir. 2009); *United States v. Maxim*, 55 F.3d 394, 397 (8th Cir. 1995).

As the Court explained in *Gates*:

> [W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." [*Spinelli v. United States*, 393 U.S. 410, 419, 89 S. Ct. 584, 21 L.Ed.2d 637 (1969)]. "A grudging or negative attitude toward warrants," [*United States v. Ventresca*, 380 U.S. 102, 108, 85 S. Ct. 741, 13 L.Ed.2d 684 (1965)], is inconsistent with the

> Fourth Amendment's strong preference for searches conducted
> pursuant to a warrant; "courts should not invalidate warrant[s]
> by interpreting affidavit[s] in a hypertechnical, rather than a
> commonsense, manner." *Id.*, 380 U.S. at 109.

*Gates*, 462 U.S. at 236; *see also United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995).

As the Eighth Circuit Court of Appeals has observed:

> Probable cause exists when "there are sufficient facts to justify
> the belief by a prudent person that contraband or evidence of a
> crime will be found in the place to be searched."

*Gladney*, 48 F.3d at 312 (quoting *United States v. Bieri*, 21 F.3d 811, 815 (8th Cir. 1994)).

Equally on point is the observation of Justice (then Judge) Kennedy:

> For probable cause to exist, a magistrate need not determine
> that the evidence sought is in fact on the premises to be
> searched, or that the evidence is more likely than not to be
> found where the search takes place. The magistrate need only
> conclude that it would be reasonable to seek the evidence in
> the place indicated in the affidavit.

*United States v. Peacock*, 761 F.2d 1313, 1315 (9th Cir. 1985) (citations omitted). Where, as here, the issuing judge relied solely on the affidavit presented to him, "'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" *Gladney*, 48 F.3d at 312 (quoting *United States v. Leichtling*, 684 F.2d 553, 555 (8th Cir. 1982).

The June Affidavit, read in its entirety, contained sufficient information to provide a basis for the state court judge's finding of probable cause for a wiretap of co-conspirators Henderson and Goodwin's telephones. Law enforcement officers had information from multiple sources that Terrell and other members of a gang were involved in bank robberies and narcotics trafficking. The reliability of these sources was corroborated. Law enforcement's focus for the wiretap investigation was on Henderson and Goodwin. As Judge Williams correctly observed, the Nebraska and federal wiretap statutes "[do] not prohibit the government from listing someone as a target subject even if probable cause is

lacking as to that person." *United States v. Dunn*, 723 F.3d 919,927 (8th Cir. 2013). Therefore, at the time the first application was granted, it was not necessary to establish probable cause for Terrell or any other individuals listed as targets, only Henderson and Goodwin. However, when later law enforcement sought wiretaps for Terrell's telephones, these applications contained numerous incriminating statements Terrell made in intercepted telephone calls during the initial wiretaps for Henderson and Goodwin's telephones.

Terrell also objects to Judge Williams's finding that the information supporting the first wiretap was not stale. The mere lapse of time between information and its use in an affidavit is not controlling, a court must also consider the nature of the criminal activity involved and whether such activity is continuous or ongoing in nature. *See United States v. Macklin*, 902 1320, 1326 (8th Cir. 1990) (instructing that the passage of time between events and issuance of warrant is less significant where the criminal activity being investigated is a continuing criminal enterprise). As Judge Williams recognized, because the criminal activities here were continuous and ongoing, any lapse of time was less significant. *See Macklin*, 902 F.2d 1320, 1326 (8th Cir. 1990); *see also United States v. Jeanetta,* 533 F.3d 651, 655 (8th Cir. 2008) ("'[W]here continuing criminal activity is suspected, the passage of time is less significant.'") (quoting *United States v. Formaro,* 152 F.3d 768, 771 (8th Cir. 1998)); *United States v. Jones*, 801 F.2d 304, 314 (8th Cir. 1986) ("The passage of time between the transactions on which a warrant is based and the ensuing search is less significant when the facts recited indicate activity of a continuous nature."); *United States v. Lueth*, 807 F.2d 719, 727 (8th Cir. 1986) (continuous and ongoing criminal activity relevant to probable cause determination); *United States v. Ellison*, 793 F.2d 942, 947 (8th Cir. 1986) (same).

The wiretap applications, here, reflect an investigation of an ongoing drug trafficking operation. Because ongoing criminal conduct was suspected here, the passage of time is less significant. *See Jeanetta*, 533 F.3d at 655; *Formaro*, 152 F.3d at 771; *Jones*, 801 F.2d

at 314. Judge Williams noted that the initial application contained background information on Terrell that was a year old, but also pointed out more recent information from March 2015 regarding Terrell's reported involvement in drug trafficking. Because the investigation was of gang members' involvement in bank robberies and drug trafficking for more than a year, and considering the information in the June Affidavit as a whole, I do not find that the information was so stale as to negate probable cause. *See United States v. Tallman*, 952 F.2d 164, 166 (8th Cir. 1991) (finding wiretap affidavit supported probable cause finding where information concerning drug trafficking took place four months before wiretap application). Therefore, this objection is also overruled.

### 4.    *Necessity requirement*

Terrell also objects to Judge Williams's finding that wiretap applications for Terrell's telephones satisfied the "necessity" requirements for the granting of a wiretap. Nebraska Revised Statutes § 86-293(3) provides, in relevant part, that:

> Upon such application the judge may enter an ex parte order, authorizing or approving interception of wire, electronic, or oral communications or mobile telephone communications within the territorial jurisdiction of the court if the judge determines on the basis of the facts submitted by the applicant that: . . . (c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous.

NEB. REV. STAT. § 86-293(3). "Whether the statutory requirement is met is to be determined by the issuing judge in a commonsense manner, and the determination is a finding of fact, which can be reversed only if clearly erroneous." *United States v. Maxwell*, 25 F.3d 1389, 1394 (8th Cir. 1994) (quoting *United States v. Macklin*, 902 F.2d 1320, 1327 (8th Cir. 1990)). The necessity requirement does not require the prosecution to exhaust every available investigative technique before a wiretap may be authorized. *Macklin*, 902 F.2d at 1326 ("While the statute does require that normal investigative procedures be used first, it does not require that law enforcement exhaust all possible techniques before

applying for a wiretap."); *see United States v. Gruber*, 994 F. Supp. 1026, 1044 (N.D. Iowa 1998); *see also United States v. Losing*, 560 F.2d 906, 910 (8th Cir. 1977).

Here, the original wiretap application, as well as those that followed, detailed the prior investigative measures law enforcement employed to identify gang members and the gang's criminal activity, and disclosed the reasons why these measures proved inadequate in this investigation. Judge Williams noted these measures in his Report and Recommendation and found that Terrell had failed to establish that other investigative techniques had a likelihood of success. Terrell's bare bones objection does not disclose what he believes is incorrect about Judge Williams's analysis. Finding no error on this issue, Terrell's objection is overruled.

### 5. *Notice requirement*

Terrell similarly makes a bare bones objection to Judge Williams's finding that the post-intercept notice requirements were satisfied. The Nebraska wiretap statute requires, in pertinent part, that within 90 days after the termination of a wiretap, the persons named in the application be provided with notice of the wiretap order and whether telephone calls were intercepted. *See* NEB. REV. STAT. § 86-293(9)(a). Judge Williams found that the Douglas County Attorney did not provide formal notices for the second wiretap within the 90 days. However, Judge Williams also found that Terrell and his counsel received actual notice of the wiretap of his phone conversations on October 26, 2015, well within the 90 day window, when during a debriefing, law enforcement agents informed Terrell and his counsel about the interception of Terrell's conversations and showed him several interception line sheets. As Judge Williams noted, the Eighth Circuit Court of Appeals has specifically addressed this issue and held that a defendant received adequate notice when the prosecution informed him of the interception, even though not with a formal notice made in the formal manner identified by statute. *See United States v. Dunn*, 723 F.3d. 919, 927 (8th Cir. 2013). Terrell's bare bones objection fails to identify any factual error in

Judge Williams's analysis or any binding legal authority contrary to *Dunn*. Accordingly, this objection, too, is overruled.

### 6. *Applicability of Leon good faith doctrine*

Finally, Terrell makes another bare bones objection to Judge Williams's finding that the "good faith doctrine" established in *United States v. Leon*, 468 U.S. 897 (1984), applies to the wiretap orders here. The Eighth Circuit Court of Appeals has held that the *Leon* "good faith doctrine" applies to wiretap orders when law enforcement officers rely in good faith on a deficient wiretap order. *See United States v. Moore*, 41 F.3d 370, 376-77 (8th Cir. 1994). However, the doctrine does not apply if the wiretap order is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid."[3] *Id.* Here, Terrell has not established that any of the wiretap applications or orders in this case were so facially deficient that the executing officers and attorneys could not presume it to be valid. Therefore, this objection, too, is overruled.

---

[3] The United States Supreme Court has concluded that suppression of evidence is required only for "failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." *United States v. Giordano*, 416 U.S. 505, 527 (1974).

### III.    CONCLUSION

Therefore, for the reasons discussed above, I, upon a *de novo* review of the record, accept Judge Williams's Report and Recommendation and deny defendant Terrell's Motion to Suppress.

**IT IS SO ORDERED**.

**DATED** this 18th day of July, 2016.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA