**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

JEREMY D. TERRELL,

        Defendant.

No. CR15-3051-MWB

**ORDER REGARDING
DEFENDANT'S MOTION TO
STRIKE INFORMATION**

_____

**TABLE OF CONTENTS**

*I.   INTRODUCTION AND BACKGROUND ............................................................... 1*

*II.  LEGAL ANALYSIS .................................................................................................. 4*
    *A.   Vindictive Prosecution Generally ................................................................ 4*
    *B.   Vindictive Circumstances Here .................................................................... 8*
        *1.   The filing of the § 851 enhancement ................................................ 8*
        *2.   Opportunity to cooperate ................................................................ 11*

*III. CONCLUSION ....................................................................................................... 17*

*I.    INTRODUCTION AND BACKGROUND*

This case raises an apparent issue of first impression: May the executive branch of the United States government refuse to allow a defendant to continue to cooperate with law enforcement with the expectation (but no promise) of receiving a substantial assistance motion, simply because he exercises his statutory rights to a preliminary hearing and detention hearing after turning himself in to authorities? In this case, there are dire

consequences to such a refusal due to the additional § 851 enhancement that requires a mandatory minimum twenty-year sentence.

This issue arises in defendant Jeremy D. Terrell's Motion to Strike Information (docket no. 68). In his motion, Terrell argues that the prosecution violated the Fifth Amendment's due process clause by filing an information for enhanced penalties, under 21 U.S.C. § 851, for refusing to waive his preliminary hearing and requesting a hearing to challenge his continued detention. The prosecution has resisted Terrell's motion. The prosecution contends that it made no threat to use a § 851 enhancement to impose an increased penalty for Terrell's prior felony drug conviction as a result of Terrell exercising his right to a preliminary hearing or a detention hearing.

On December 9, 2015, a complaint was filed charging Terrell with possessing with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and possessing with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). The complaint followed the seizure of narcotics from Terrell on August 14, 2015, and August 29, 2015. Following his arrest, in August 2015, Terrell was questioned by law enforcement officers. Subsequently, Terrell, through counsel, voluntarily contacted law enforcement and signed a proffer agreement. On September 14, 2015, and October 26, 2015, Terrell participated in two proffer interviews at the FBI's Omaha field office.

The day after the complaint was filed, December 10, 2015, FBI Special Agent John D. Hallock contacted Terrell's counsel about Terrell turning himself in on the charges. Terrell voluntarily turned himself in to Agent Hallock that same day. On December 11, 2015, Terrell had his initial appearance before a United States magistrate judge. At Terrell's initial appearance, a combined preliminary and detention hearing was set for December 15, 2015, before then United States Magistrate Judge Leonard T. Strand.[1]

---

[1] On February 11, 2016, Judge Strand was confirmed as a United States District Court Judge for the Northern District of Iowa.

On December 15, 2015, shortly before the scheduled preliminary and detention hearing, an Indictment was obtained against Terrell, charging him with conspiracy to distribute 500 grams or more of a methamphetamine mixture which contained 50 grams or more of pure methamphetamine, having previously been convicted of a felony drug offense in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, and 851 (Count 1), possessing with intent to distribute 500 grams or more of a methamphetamine mixture which contained 50 grams or more of pure methamphetamine, having previously been convicted of a felony drug offense, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 851 (Count 2), and possessing with intent to distribute cocaine, having previously been convicted of a felony drug offense, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 851 (Count 3).[2]

Before testimony was offered at the preliminary and detention hearing, the prosecution made the following statement:

> I did request the defendant and his counsel consider waiving preliminary hearing and – and detention in this particular matter due to certain circumstances including risk to the defendant due to – overall due to his involvement in this offense and risk of other offenders considering him a cooperator even though he is not a cooperator at this time.
>
> He has declined that, and I want him to know because I did indicate to him that if he went forward with this hearing that it would be likely that the government would not seek his cooperation in the future, and he does face a 20-year mandatory minimum. I just wanted him to be aware of those things, and I wanted those on the record after he declined that option.

---

[2] The grand jury indicted Terrell the morning of December 15, 2015. However, the Indictment was not returned in open court until that afternoon, after Terrell's preliminary and detention hearing was completed. This sequence of events occurred because the time for grand jury returns was already scheduled when the time for Terrell's preliminary and detention hearing was set. The prosecution concedes that it could have requested that the court take the Indictment's return earlier than Terrell's hearing, thereby obviating the need for a preliminary hearing.

Preliminary Hearing Tr. at 2-3.  Judge Strand then asked defense counsel if there was any record he wished to make at that time.  In response, defense counsel stated:

> Just briefly on that front, my client's been participating in cooperation since August of this year.  He's had multiple meetings with law enforcement both in my presence and outside my presence.  I've indicated to the U.S. Attorney's Office that my client has not sealed off the possibility of cooperating.  It's just – it's he voluntarily turned himself in on this particular occasion after working for several months.

Preliminary Hearing Tr. at 3.  Judge Strand then observed: "It sounds like the opportunity to cooperate's going to go away if we have this hearing.  Do you understand that?" Preliminary Hearing Tr. at 3-4.  After conferring with Terrell, defense counsel responded: "Thank you.  Yes, we are prepared to proceed, Your Honor."  Preliminary Hearing Tr. at 4.

The preliminary and detention hearing proceeded as scheduled.  At the conclusion of the hearing, Judge Strand found probable cause for the charges and that the prosecution had established grounds for Terrell's detention.

On August 5, 2016, Terrell appeared before United States Magistrate Judge C.J. Williams and entered a plea of guilty to Counts 1, 2, and 3 of the Indictment.  I, subsequently, accepted Terrell's plea of guilty to the three counts.  Terrell then filed the Motion to Strike Information presently before me.  I then held a hearing on Terrell's motion.

## II. LEGAL ANALYSIS
### A. *Vindictive Prosecution Generally*

A prosecutor enjoys broad discretion in determining whom to prosecute for what crime, and such pretrial charging decisions are presumed to be legitimate.  *Bordenkircher*

*v. Hayes*, 434 U.S. 357, 364 (1978).³ Nonetheless, a prosecutor violates due process when he or she penalizes an individual for exercising a statutory or constitutional right. *See United States v. Goodwin*, 457 U.S. 368, 372 (1982) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort.") (internal quotation omitted)); *United States v. Robinson*, 809 F.3d 991, 1000 (8th Cir. 2016) ("Although the government may take action to punish a defendant for committing a crime, punishing a defendant for exercising his valid legal rights is impermissible prosecutorial vindictiveness.") (quoting *United States v. Campbell*, 410 F.3d 456, 461 (8th Cir. 2005)); *see also United States v. Jenkins*, 537 F.3d 1, 3 (1st Cir. 2008*)* ("A vindictive prosecution-one in which the prosecutor seeks to punish the defendant for exercising a protected statutory or constitutional right-violates a defendant's Fifth Amendment right to due process.").

Accordingly, the prosecution's action may be vacated upon sufficient proof of vindictiveness. *See Thompson v. Armontrout*, 808 F.2d 28, 33 (8th Cir. 1986) (affirming district court's order requiring petitioner's release on parole after finding the state vindictively denied him parole); *United States v. Meyer*, 810 F.2d 1242, 1246 (D.C. Cir. 1987) (holding that district court did not abuse its discretion in dismissing informations on ground of prosecutorial vindictiveness). A defendant who lacks direct evidence of a vindictive motive can establish a rebuttable presumption of vindictiveness by demonstrating circumstances that reveal a sufficient likelihood of vindictiveness. *Jenkins*, 537 F.3d at 3. However, because such a presumption "may operate in the absence of any proof of an improper motive," *Goodwin*, 457 U.S. at 373, to establish a presumption of prosecutorial vindictiveness, the defendant must show that "the circumstances of a case pose a 'realistic likelihood' of such vindictiveness." *Blackledge v. Perry*, 417 U.S. 21, 27

---

³ In *Bordenkircher*, the United States Supreme Court held that, in the give and take of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer. *Bordenkircher*, 434 U.S. at 363.

(1974). The circumstances must present a realistic likelihood of vindictiveness that would be "applicable in all cases," *Goodwin*, 457 U.S. at 381, and any such presumption may be "overcome by objective evidence justifying the prosecutor's action," *id.* at 376 n. 8; *see United States v. LaDeau*, 734 F.3d 561, 566 (6th Cir. 2013) (The prosecution "bears the burden of rebutting the presumption with 'objective, on-the-record explanations' such as 'governmental discovery of previously unknown evidence' or 'previous legal impossibility.'" (quoting *Bragan v. Poindexter*, 249 F.3d 476, 482 (6th Cir. 2001)). In determining whether the presumption of vindictiveness applies, "a court must examine the prosecution's actions in the context of the entire proceedings." *United States v. Krezdorn*, 718 F.2d 1360, 1365 (5th Cir. 1983) (*en banc*). Even if a defendant establishes a realistic likelihood of vindictiveness, however, the prosecution still has an opportunity to proffer legitimate, objective reasons for its conduct. *See Goodwin*, 457 U.S. at 374; *Krezdorn*, 718 F.2d at 1365.

Raising such a presumption is especially difficult in a pretrial setting, however, given that a prosecutor is afforded broad discretion to determine whom should be prosecuted and for what crime and is presumed to have exercised that discretion in good faith.[4] *See United States v. Bucci*, 582 F.3d 108, 112 (1st Cir. 2009*); see also United States*

---

[4] The presumption of vindictiveness typically applies to the prosecution's charging decisions after a defendant exercises a procedural right. *Blackledge*, 417 U.S. at 27. In *Goodwin*, 457 U.S. 368, the defendant had already exercised his rights to decline to plead guilty to the misdemeanor charge against him and to request a jury trial when the prosecutor had him indicted on a felony charge, for which he was ultimately convicted. *Id.* at 370-71. Even though the defendant contended he was being punished for exercising his right to a jury trial, the Court held the circumstances of that case made it inappropriate to apply a *Blackledge*-type presumption of vindictiveness. The Court distinguished between *Blackledge*, which involved a prosecutor's action after a conviction had been obtained and vacated, and *Bordenkircher* and *Goodwin*, which involved a prosecutor's decision to augment the charges against the defendants before trial. *Id*. at 376-81. The Court noted that the prosecutor who adds charges after a conviction has been obtained and vacated is likely to have had a personal stake in the first trial and to be tempted to engage in self-

vindication. *Id*. at 383. Additionally, the Court held that there was an "institutional bias" against retrial of a "decided question." *Id*. In contrast, there is no such bias against according the defendant his right to trial by jury, and everyone expects a defendant to invoke numerous procedural rights before trial. *Id*. at 381-83. Moreover, changes in charging decisions are quite usual early in the proceedings when the prosecution's view of the case may not have "crystallized," but are unusual and more surprising once the trial has begun. *Id*. at 381. In light of these differences between the post-trial situation in *Blackledge* and the pretrial situation in *Goodwin*, the Court held there was not a "realistic likelihood of 'vindictiveness'" in *Goodwin* that would justify a presumption of vindictiveness. *Id*. at 383-84. Even though no presumption of vindictiveness applied in *Goodwin*, most courts have not read *Goodwin* as propounding a categorical rule against a presumption of prosecutorial vindictiveness in the pretrial setting; instead, they have interpreted it as simply directing the courts to evaluate the "realistic likelihood of vindictiveness" in a particular factual situation, including a pretrial situation, and to determine whether any facts make a presumption of vindictiveness proper. *See e.g., United States v. Wilson*, 262 F.3d 305, 317-20 (4th Cir. 2001) ("[T]he presumption of vindictiveness . . . will rarely, if ever, be applied to prosecutors' pretrial decisions."); *United States v. Raymer*, 941 F.2d 1031, 1040 (10th Cir. 1991) (noting that, although the Supreme Court has yet to apply the presumption of vindictiveness in a pretrial setting, it may exist in pretrial situations "which are genuinely distinguishable from *Goodwin* and *Bordenkirche*r" under a totality of the circumstances test); *United States v. Meyers*, 810 F.2d 1242, 1245–46 (D.C. Cir. 1987) (recognizing that a presumption of vindictiveness "will lie in the pretrial setting if the defendant presents facts sufficient to show a realistic likelihood of vindictiveness"); *United States v. Krezdorn*, 718 F.2d 1360, 1364–65 (5th Cir. 1983) ("The judicial history of decisions involving . . . prosecutorial vindictiveness is now clear enough to teach that it is a mistake to measure cases in this area of the law against fixed gauges. The proper solution is not to be found by classifying prosecutorial decisions as . . . being made pre-or post-trial."); *United States v. Gallegos–Curiel*, 681 F.2d 1164, 1168–69 (9th Cir. 1982) (holding that the exercise of routine or necessary pretrial defense motions does not meet the threshold for a presumption of vindictiveness without more, such as the timing and nature of the defendant's actions). *But see United States v. Bullis*, 77 F.3d 1553, 1559 (7th Cir. 1996) (in pretrial situation, presumption of vindictiveness not applicable and defendant must come forward with objective evidence of actual vindictiveness). Nonetheless, the parties have not cited, and I have not found, any case in which a court has applied *Blackledge* to a pretrial context where the defendant attacks something other than a charging decision. The prosecution, here, filed no new or more severe charges. However, the prosecution's decision closed the door on Terrell's continued cooperation and any opportunity to provide substantial assistance, and possibly the benefit

7

*v. Cooper*, 461 F.3d 850, 856 (7th Cir. 2006) (the "presumption of vindictiveness does not apply to pretrial decisions by the prosecution"); *United States v. Wilson*, 262 F.3d 305, 315 (4th Cir. 2001) ("[T]he presumption of vindictiveness . . . will rarely, if ever, be applied to prosecutors' pretrial decisions."); *Sanders*, 211 F.3d at 717 ("A presumption of vindictiveness generally does not arise in a pretrial setting.").

### B. *Vindictive Circumstances Here*

Terrell has not presented any evidence of actual vindictiveness. Instead, Terrell argues that he has presented objective evidence giving rise to a presumption of vindictive motivation. First, he contends that the prosecution violated the Fifth Amendment's due process clause by filing an information for enhanced penalties, under 21 U.S.C. § 851, because he refused to waive his preliminary hearing and challenged his continued detention. In this argument, Terrell relies solely on the timing of the Indictment against him which contained the § 851 notice. Second, Terrell argues that the prosecution refused to provide him with an opportunity to provide substantial assistance, and possibly benefit from a § 3553(e) motion, in retaliation for his decision to proceed with the preliminary hearing and challenge his continued detention. The prosecution argues that its decision to seek a § 851 enhancement was made before Terrell refused to waive his preliminary hearing and challenged his continued detention. Thus, the prosecution contends its decision to seek the § 851 enhancement could not have been retaliatory. The prosecution further argues that Terrell had no constitutional right to cooperate.

### 1. *The filing of the § 851 enhancement*

Both parties cite the Supreme Court's decision in *Bordenkircher v. Hayes* as being instructive. In *Bordenkircher*, the prosecutor explicitly told the defendant that if he did not plead guilty, the government would seek an additional charge that would significantly

---

of a § 3553(e) motion. Thus, the prosecution's actions effectively imposed a 20-year mandatory minimum sentence on Terrell with his conviction and distinguishes this case from *Goodwin* and its progeny.

8

increase his potential punishment. *Bordenkircher*, 434 U.S. at 358–59. The defendant refused to plead guilty and was subsequently reindicted. *Id.* at 359. There was no dispute that the additional charge was justified by the evidence, that the prosecutor was in possession of this evidence at the time the original indictment was filed, and that the prosecutor sought the additional charge because of the defendant's refusal to plead guilty to the original charge. *Id.* In finding no due process violation, the United States Supreme Court distinguished previous cases in which the prosecution unlawfully penalized a defendant for attacking his conviction on appeal. *Id*. at 362–63. In those cases, "the due process violation lay not in the possibility that a defendant might be deterred from the exercise of a legal right, but rather in the danger that the State might be retaliating against the accused for lawfully attacking his conviction." *Id.* at 363 (internal citations omitted). By comparison, there is no such element of retaliation in the "give and take" of plea bargaining, so long as the defendant is free to accept or reject the prosecution's offer. *Id*. While the threat of increased charges will undoubtedly affect a defendant's choice to exercise his trial rights, "the imposition of these difficult choices [is] inevitable . . . [in] any legitimate system which tolerates and encourages the negotiation of pleas." *Id*. The Court ultimately held that a prosecutor does not violate due process when he "openly present[s] the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution." *Id*. at 367. Thus, the Court explicitly recognized as "constitutionally legitimate" the prosecution's interest in persuading a defendant to forgo his right to trial and plead guilty. *See id.* at 363.

Federal appellate courts have applied *Bordenkircher* to a prosecutor's decision to file a statutory enhancement following unsuccessful plea negotiations, despite a defendant's unconditional guilty plea. In *Jenkins,* the defendant was indicted on two counts of distributing crack cocaine. *Jenkins*, 537 F.3d at 2. The prosecution offered a written plea agreement, which contained a waiver of the defendant's right to file a direct appeal. *Id*. In exchange for the defendant's plea, the prosecution promised not to file an

information under 21 U.S.C. § 851. *Id.* After the defendant rejected the plea offer, the prosecution filed an § 851 information. Subsequently, the defendant pleaded guilty without the benefit of a plea agreement. *Id.* On appeal, the defendant contended the prosecutor's decision to file a statutory enhancement was motivated by prosecutorial vindictiveness. *Id.* at 3. Specifically, he contended the prosecution sought to penalize him for refusing to accept a plea offer that contained an appellate waiver. *Id.* Citing *Bordenkircher,* the First Circuit Court of Appeals rejected defendant's argument. *See id.* at 3–5. The court explained:

> Here, as in *Bordenkircher*, the prosecutor tried to induce a plea by agreeing to lenient treatment for the defendant. In *Bordenkircher*, the prosecutor agreed, as part of his plea offer, to refrain from seeking the return of additional charges under the state career offender statute, charges that were undisputedly supported by the facts. Here, the prosecutor agreed, as part of his plea offer, to refrain from filing a section 851 enhancement information, an information that was undisputedly supported by the facts. In both cases, the plea negotiations were unsuccessful, and the defendants faced higher penalties as a result. In neither case was a presumption of vindictiveness warranted.

*Id.* at 4. The Ninth Circuit Court of Appeals and the Second Circuit Court of Appeals subsequently reached the same conclusion. *See United States v. Pacheco*, 512 F. App'x 112, 114 (2d Cir. 2013) (holding that "[t]he government's decision at the outset to forgo filing any § 851 notice and use the threat of such filing as a bargaining chip in plea negotiations does not render unconstitutional the decision to file a § 851 notice after [the defendant] repeatedly declined to plead guilty to the lesser charges."); *United States v. Kent*, 649 F.3d 906, 909 (9th Cir. 2011) (same conclusion reached).

Terrell's argument, that the prosecution filed an information for enhanced penalties, under 21 U.S.C. § 851, due to his refusal to waive his preliminary hearing and challenging his continued detention, is grounded on a factual error. Terrell presumed that the

prosecution only made its decision to file a § 851 notice *after* Terrell made his decision to go ahead with the preliminary hearing and challenge his continued detention. The factual flaw in Terrell's argument is that the prosecution obtained its Indictment against Terrell shortly *before* the scheduled preliminary and detention hearing. Thus, Terrell's decision to go ahead with the preliminary hearing and challenge his continued detention had no impact on the prosecution's decision to obtain the Indictment with the § 851 notice. Thus, no presumption of vindictiveness is warranted from the timing of the Indictment.

### 2. *Opportunity to cooperate*

Terrell's second argument is that the prosecution refused to provide him with an opportunity to continue cooperating in retaliation for his decision to proceed with the preliminary hearing and challenge his continued detention. The prosecution argues that Terrell had no constitutional right to cooperate.

The prosecution is correct in its assertion that a defendant does not have a constitutional right to cooperation. *See United States v. Vargas*, 925 F.2d 1260, 1263 (10th Cir. 1991) (holding that a defendant does not have "an absolute right to cooperate and earn a downward sentence"); *United States v. LaGuardia*, 902 F.2d 1010, 1014–15 (1st Cir. 1990) ("defendants have no right to a departure from the guidelines based on their cooperation"); *United States v. Castano-Vargas*, 124 F. Supp. 2d 185, 191 (S.D.N.Y. 2000) ("No defendant has a right to a cooperation agreement and its benefits."); *United States v. Jacobs*, 914 F. Supp. 41, 43 (E.D.N.Y. 1995) ("The defendant has no absolute right to cooperate or offer to cooperate and demand that a § 5K1.1 motion be made on her behalf."). Nonetheless, Congress has established two statutory means for reducing a defendant's sentence based on the defendant's substantial assistance to the prosecution. Both 18 U.S.C. § 3553(e) ("Upon motion of the Government," the district court may depart from the statutory minimum sentence "to reflect a defendant's substantial assistance in the investigation or prosecution of another person.") and U.S.S.G. § 5K1.1 (authorizing a departure from the Guidelines sentence "[u]pon motion of the government stating that the

defendant has provided substantial assistance in the investigation or prosecution of another person") "give 'the Government a power, not a duty, to file a motion when a defendant has substantially assisted' in the prosecution or investigation of other persons involved in criminal activity." *United States v. Perez*, 526 F.3d 1135, 1138 (8th Cir. 2008) (quoting *Wade v. United States*, 504 U.S. 181, 185 (1992)); *see United States v. Smith*, 574 F.3d 521, 525 (8th Cir. 2009) (same).

The prosecution has "broad discretion" to file "a motion for substantial assistance." *Smith*, 574 F.3d at 525; *United States v. Davis*, 397 F.3d 672, 676 (8th Cir. 2005). "A district court may review the government's refusal to make a substantial assistance motion . . . if such refusal (1) was prompted by an unconstitutional motive, such as the defendant's race or religion; or (2) was not rationally related to a legitimate government interest." *Perez,* 526 F.3d at 1138 (quotations omitted).[5] In other words, § 3553(e) "was not intended

---

[5] Likewise, post-sentencing, Rule 35(b) of the Federal Rules of Criminal Procedure permits a court, upon the prosecution's motion, "to reduce a sentence to reflect a defendant's subsequent substantial assistance in investigating or prosecuting another person. . . ." FED. R. CRIM. P. 35(b). A Rule 35(b) motion can be made exclusively by the United States Attorney's Office. Federal district courts have authority to review the prosecution's discretionary refusal to file a Rule 35(b) motion in two narrow instances, "but the defendant must make a 'substantial threshold showing' of one of them before a court may act." *United States v. Marks*, 244 F.3d 971, 975 (8th Cir. 2001) (quoting *Wade v. United States*, 504 U.S. 181, 186 (1992)); *accord United States v. Godinez*, 474 F.3d 1039, 1044 (8th Cir. 2007); *United States v. Hardy*, 325 F.3d 994, 996 (8th Cir. 2003); *United States v. Amezcua*, 276 F.3d 445, 447 (8th Cir. 2002) (2002); *United States v. Romsey*, 975 F.2d 556, 558 (8th Cir. 1992). "Without such a showing, a defendant is not entitled to any remedy or even an evidentiary hearing." *Amezcua*, 276 F.3d at 447 (citing *Wade*, 504 U.S. at 186); *United States v. McClure*, 338 F.3d 847, 850 (8th Cir. 2003); *Hardy*, 325 F.3d at 996; *United States v. Wolf*, 270 F.3d 1188, 1190 (8th Cir. 2001); *United Staona–Lopez*, 163 F.3d 1040, 1042 (8th Cir. 1998); *United States v. Rounsavall*, 128 F.3d 665, 667–68 (8th Cir. 1997). As the Eighth Circuit Court of Appeals observed in *Marks*, courts have authority to review the prosecution's discretionary refusal to file a Rule 35(b) only in the following two instances,

to grant prosecutors a general power to control the length of sentences." *United States v. Stockdall*, 45 F.3d 1257, 1261 (8th Cir. 1995). Therefore, in *United States v. Anzalone*, 148 F.3d 940, 942, *vacated*, 148 F.3d 940, *reinstated*, 161 F.3d 1125 (8th Cir. 1998), when the prosecution conceded that the defendant rendered sufficiently substantial assistance, but refused to file a substantial assistance motion because of unrelated misconduct, the Eighth Circuit Court of Appeals held that § 3553(e) required the prosecution to file the motion, noting that the prosecutor could then argue to the court that the unrelated misconduct "should preclude or severely restrict any downward departure relief." *Id.* at 942.

Terrell argues that, in refusing to allow him to continue to cooperate, the prosecution denied him an opportunity to provide substantial assistance and possibly benefit from a § 3553(e) motion.[6] Without the possibility of the prosecution filing a motion for a downward departure pursuant to § 3553(e), Terrell is subject to the statutory mandatory minimum 20-year term of imprisonment. In *Blackledge*, 417 U.S. 21 (1974), the Supreme Court observed that the presumption of vindictiveness applied because "the prosecutor has the

---

> First, the defendant may show that the government's "refusal was based on an unconstitutional motive," such as race or religion. [*Wade*, 504 U.S.] at 185–86, 112 S. Ct. 1840. Second, the decision may qualify for court review if the defendant can make a threshold showing that "the prosecutor's refusal to move was not rationally related to any legitimate Government end," for example, that the decision was made arbitrarily or in bad faith. *Id.* at 186, 504 U.S. 181, 112 S. Ct. 1840.

*Marks*, 244 F.3d at 975; *accord Hardy*, 325 F.3d at 996.

[6] The practice of the U.S. Attorney's Office in this district is that sometimes the § 851 notice is waived for a cooperator and sometimes it isn't in the sole discretion of their office. I take no position whether it would have been waived or not in this case had Terrell been allowed to continue to cooperate, because I have never been able to tell with any certainty when it will be waived or why.

means readily at hand to discourage such appeals—by 'upping the ante' through a felony indictment whenever a convicted misdemeanant pursues his statutory appellate remedy."[7] *Id.* at 27–28. The prosecution's actions, here, in eliminating Terrell's opportunity to continue cooperating clearly constitute "upping the ante." A substantial assistance motion permits the district court to impose a sentence below the statutory mandatory minimum (3553(e)) or the sentencing guidelines range (U.S.S.G. 5K1.1) if there is no mandatory

---

[7] The United States Supreme Court first applied the presumption of vindictiveness in *North Carolina v. Pearce*, 395 U.S. 711, 725 (1969). *See United States v. Fry*, 792 F.3d 884, 889 (8th Cir. 2015). In *Pearce*, the Court held that the Due Process Clause of the Fourteenth Amendment "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *Id.* To ensure the absence of such a motivation, the Court applied a presumption of vindictiveness, which may only be overcome by objective evidence in the record justifying the increased sentence. *Id.* at 726. The Court later summarized *Pearce* as:

> Positing that a more severe penalty after reconviction would violate due process of law if imposed as purposeful punishment for having successfully appealed, the court concluded that such untoward sentences occurred with sufficient frequency to warrant the imposition of a prophylactic rule to ensure "that vindictiveness against a defendant for having successfully attacked his first conviction . . . (would) play no part in the sentence he receives after a new trial ..." and to ensure that the apprehension of such vindictiveness does not "deter a defendant's exercise of the right to appeal or collaterally attack his first conviction. . . ."

*Colten v. Kentucky*, 407 U.S. 104, 116 (1972) (quoting *Pearce*, 395 U.S. at 725). Subsequently, in *Blackledge*, 417 U.S. at 22–23, 28–29, the Supreme Court applied the presumption of vindictiveness where the prosecution filed additional charges after the defendant exercised his right to a *de novo* trial for his misdemeanor conviction. The Court held that the opportunities for vindictiveness in the situation before it were such "as to impel the conclusion that due process of law requires a rule analogous to that of the *Pearce* case." *Id.* at 27.

minimum.[8] By restricting Terrell's ability to earn such a motion, the prosecution changed the severity of the possible punishment Terrell faces.

Here, the context and objective circumstances present a reasonable likelihood of vindictiveness. The prosecution's decision to deny Terrell an opportunity to continue cooperating and, thereby, provide substantial assistance was based entirely on factors unrelated to Terrell's assistance to that point. Following his arrest, Terrell, through counsel, voluntarily contacted law enforcement and signed a proffer agreement. Terrell then followed up by participating in two proffer interviews at the FBI's Omaha field office. The day after the complaint was filed, December 10, 2015, FBI Special Agent Hallock contacted Terrell's counsel about Terrell turning himself in on the charges. Terrell voluntarily turned himself in to Agent Hallock that same day. The next day, December 11, 2015, Terrell had his initial appearance and a preliminary and detention hearing was set for December 15, 2015. Up until that point, the prosecution was fully open to Terrell's continued cooperation. However, at that juncture, the prosecution explicitly threatened Terrell that "if he went forward with this [preliminary and detention] hearing that it would be likely that the government would not seek his cooperation in the future. . . ."[9] Preliminary Hearing Tr. at 2-3.

---

[8] Terrell's Presentence Investigation Report indicates that Terrell's total offense level is 31 and that his criminal history score of six points places him in criminal history category III. Absent the § 851 enhancement, Terrell's recommended guidelines sentence is 135 to 168 months. Under these circumstances, because the twenty-year mandatory minimum sentence facing Terrell was greater than his guidelines sentence, only a § 3553(e) motion would be of assistance to him.

[9] The prosecution indicated, before the start of the preliminary hearing, that it was seeking Terrell's waiver of that hearing and his detention "due to certain circumstances including the risk to the defendant due to – overall due to his involvement in this offense and risk of other offenders considering him a cooperator even though he is not a cooperator at this time." Preliminary Hearing Tr. at 3.

The prosecution followed through with its threat, after Terrell insisted on going forward with the preliminary and detention hearing, by not giving Terrell an opportunity to continue cooperating.[10] The prosecution's about-face on Terrell's cooperation was clearly in response to Terrell's insistence on pressing forward with the hearing. The retaliatory nature of this response is best evidenced by the fact that, even though the prosecution prevailed at the detention hearing and Terrell was detained pending trial, thereby resolving the prosecution's stated concerns about safety risks to Terrell and others if he was released, the prosecution followed through with its threat and did not give Terrell an opportunity to continue cooperating. Because the prosecution had already obtained an Indictment against Terrell which contained the § 851 notice, the prosecution's action effectively imposed a 20-year mandatory minimum sentence on Terrell upon his conviction. Terrell was treated worse than he would have been if he had not refused the prosecution's demand that he waive his preliminary hearing and allow his continued detention. Accordingly, I conclude that this sequence of events is sufficient to raise a presumption of vindictiveness. The prosecution has not rebutted this presumption.[11] Consequently, Terrell has established prosecutorial vindictiveness in the prosecutor's decision to not give Terrell an opportunity to continue cooperating, and possibly reduce his sentence. Thus, the prosecution's § 851 notice is stricken. *See Thompson*, 808 F.2d at 33.

---

[10]Terrell had the right to a detention hearing within the time requirements of 18 U.S.C. § 3142(f)). *See United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1989); *United States v. Coonan*, 826 F.2d 1180, 1184 (2nd Cir. 1987).

[11] I note that the AUSA, here, had no personal vindictiveness against Terrell. He is an AUSA of exceptional integrity, honesty, forthrightness and exemplifies the values of a model federal prosecutor. I simply find that his actions, likely the result of an informal policy, constitute legal vindictiveness.

### *III.   CONCLUSION*

For the reasons discussed, above, defendant Terrell's Motion to Strike Information is granted. The prosecution's notice of intent to seek enhanced penalties is stricken.

**IT IS SO ORDERED**.

**DATED** this 9th day of December, 2016.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA